UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA BLACKMAN-BAHAM,<br><br>Plaintiff,<br><br>v.<br><br>JOHN F. KELLY, Secretary of the<br>Department of Homeland Security<br><br>Defendant. | Case No.  16-cv-03487-JCS<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART MOTION TO<br>DISMISS**<br><br>Re: Dkt. No. 20 |

## I.     INTRODUCTION

Plaintiff Sheila Blackman-Baham, an employee of the Federal Emergency Management Agency ("FEMA"), brings this action against the Secretary of the Department of Homeland Security[1] based on alleged employment discrimination based on age, race, sex, and disability and retaliation for prior EEO activity.   Defendant has brought a Motion to Dismiss ("Motion") seeking dismissal of Plaintiff's complaint  for failure to exhaust administrative remedies under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6).  The Court vacated the hearing pursuant to Civil Local Rule 7-1(b) and took the Motion under submission. *See* Docket No. 28. For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[2]

## II.    BACKGROUND

### A.    The First Amended Complaint

Plaintiff began working for FEMA on October 10, 2010.  First Amended Complaint ("FAC") ¶ 6(b).  She alleges that Defendant "started harassing, and making plaintiff's working

---

[1] John Kelly has replaced Jeh Johnson as Secretary of the Department of Homeland Security and is therefore substituted as a defendant. *See* Fed. R. Civ. P. 25(d).
[2] The parties have consented to the jurisdiction of the undersigned United States magistrate judge pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

United States District Court
Northern District of California

environment hostile, as early as her first couple of months" in retaliation for her "prior EEO

activity." *Id*. ¶ 6(c).  This retaliation allegedly included "attempt[ing] to disqualify [P]laintiff

for re-employment, . . . interviewing [her] physicians, neighbors, [and] landlords[,] suggesting

negative characteristics about [her][,] [a]ccusing [her] of acting disrespectfully, or not

cooperating" and "denying [her] training and promotional opportunities." *Id*.;  *see also id*. ¶ 6(d)

(alleging that in March 2011 Defendant "harassed plaintiff[ ] about her reinvestigation")  & (e)

(alleging that in April 2011 Defendant "denied plaintiff consideration for a promotional

opportunity, while forcing plaintiff to perform the duties of the higher grade position for almost 90

days, without promotional pay").

Plaintiff further alleges that in September 2011, Defendant "denied [her] training

opportunities and additional pay, to process the first wrongful termination," *id*. ¶ 6(f), "barred

[P]laintiff from her workspace, and charged her almost two weeks of Leave Without Pay." *Id*. ¶

6(g).  According to Plaintiff, Defendant "improperly stated facts to MSPB" in connection with the

two weeks of leave without pay, causing the MSPB to rule in Defendant's favor based on this

inaccurate information. *Id*. ¶ 6(g).  Plaintiff also alleges that Defendant "attempted to wrongfully

terminate plaintiff as a probationary employee, based on her period of unemployment and illness."

*Id*. ¶ 6(i).  Plaintiff further alleges that Defendant "posted termination documents on [her]

residence in plain view of Plaintiff's neighbors or anyone else to see." *Id*. ¶ 6(h).  According to

Plaintiff, Defendant "was allowed to retract the [termination] when plaintiff proved she was in fact

an employee, not subject to a probation period." *Id*. ¶ 6(i).[3]

Plaintiff alleges that in January 2012, Defendant wrongfully terminated her a second time,

based on her debts during her time of unemployment and illness, and that this decision caused her

and her family to become homeless.  *Id*. ¶ 6(j).  This decision was overturned by the MSPB in

---

[3]As discussed below, Plaintiff filed two MSPB appeals during this period, one on November 2,
2011 challenging her termination and another on December 11, 2011 seeking back pay for the
two-week period referenced above on the basis that she had been constructively suspended from
duty. *See* RJN, Exs. A & C.  In the first MSPB proceeding, FEMA conceded Plaintiff was not a
subject to a probationary period and reinstated Plaintiff with back pay. In the second MSPB
proceeding, the Administrative Judge concluded that Plaintiff's absence from work during the
two-week period was voluntary and therefore did not constitute a constructive suspension.

United States District Court
Northern District of California

1   August 2013, at which time Plaintiff was restored to her position.  *Id.* ¶ 6(k).

2       Plaintiff also alleges that Defendant mischaracterized her EEO claims (discussed below),

3   tried to direct Plaintiff to the wrong place to file her EEOC case, and attempted to mislead the

4   EEOC into believing that she had abandoned her claims.  *Id.* ¶ 6(l)-(n).   Plaintiff further alleges

5   Defendant has continued to "harass, not promote and discriminate[ ] against [P]laintiff continually

6   since her return [to work] in August 2013."  *Id.* ¶ 6(o).

7       Plaintiff alleges that the EEOC issued an "Order/Dismissal in Favor of U.S. District Court

8   Action" on March 24, 2016.  *Id.* ¶ 7.  She initiated this action on June 22, 2016, when she filed the

9   original complaint.  She filed her FAC on September 30, 2016.

10      Plaintiff alleges that Defendant discriminated against her based on her age, sex, race,

11  gender and "physical/mental disabilities."  *Id.*  ¶ 5.[4]   She also asserts a retaliation claim based on

12  her prior EEO activity (discussed below).  She asserts the following claims in the FAC:

13      1) <u>Claim One</u>:  Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§  2000e

14  *et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 633a

15  ("ADEA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 791 ("Rehabilitation Act") based on

16  the allegation that Defendant "processed two wrongful terminations against [P]laintiff, because

17  she was unemployed and ill for almost two years and had debt, violating [P]laintiff's due process

18  rights."  FAC ¶ 9.   In this claim, Plaintiff alleges that she is a "tenured disabled employee who is

19  in a protected class" but does not specifically identify a particular protected class.  *Id.*

20      2) <u>Claim Two</u>:  Failure to consider Plaintiff for a promotional opportunity, in violation of

21  Rehabilitation Act and the Lilly Ledbetter Fair Pay Act of 2009 (Pub.L. No. 111–2) ("LLA")

22  based on the allegation that she "was denied consideration for a promotion and career

23  advancement opportunity, although she had completed almost 90 days in the [position], without

24  the additional higher grade of pay."  *Id.* ¶ 11.  Plaintiff does not identify the type of discrimination

25  she contends led to Defendant's failure to consider her for promotion and career advancement.

26

27  ─────────────

[4]Although Plaintiff does not allege specific facts in her complaint relating to her age, race or
disability, she states in her December 19, 2011 EEO Complaint that she was born in May 1963,
28  that she is African-American and that she suffers from depression and chronic hip and knee pain.
Wallace Decl., Ex. A.

United States District Court
Northern District of California

3) <u>Claim Three</u>:  Retaliation for prior EEO activity, in violation of Title VII and the ADEA based on the allegation that "[d]uring [P]laintiff's interview with the investigator, and during the process of [P]laintiff's investigation, [P]laintiff was harassed about her ongoing EEO case."  *Id.* ¶

4) <u>Claim Four</u>:  Disability Discrimination in violation of Rehabilitation Act and the LLA based on allegation that "Plaintiff was denied training opportunities, which were later used against [her] future [deployability] . . .[w]hile other's outside plaintiff's protected class were trained, and entitled to additional pay."   *Id.* ¶ 15.

5) <u>Claim Five</u>:  Failure to afford Plaintiff additional wages, in violation of the Rehabilitation Act of 1973 and Fair Pay Act of 2009 based on allegation that Defendant "prevented [P]laintiff from deploying to disaster declarations, which prevented [P]laintiff from earning additional wages, which were tax free . . . [w]hile other similar[ly] situated contract specialists not in plaintiff's protected class were not treated the same."  *Id.* ¶ 17.  Again, Plaintiff does not identify a specific "protected class."

6) <u>Claim Six</u>:  Hostile working environment in violation of the Title VII, the ADEA and the Rehabilitation Act based on allegation that Defendant "subject plaintiff to harsh working conditions and hostile environments, while violating [P]laintiff's due process rights" even though Plaintiff  "was a tenured disabled employee and the defendant was well aware of [Plaintiff's] medical conditions." *Id.* ¶ 19.

7) <u>Claim Seven</u>:  Disparate Treatment in violation of the Title VII, the ADEA and the Rehabilitation Act based on allegation that Plaintiff is a "tenured qualified disabled employee, who is in a protected class" and "was subjected to discriminatory treatment, different from other employees who were not in her protected class, but were similarly situate[ed]." *Id.* ¶ 21.  Plaintiff does not identify the specific type of discrimination alleged under this claim.

United States District Court
Northern District of California

**B.     Administrative Proceedings[5]**

As set forth below, Plaintiff filed MSPB Appeals challenging her terminations in 2011 and 2012, as well as a another MSPB appeal challenging FEMA's failure to pay her wages for the two-week period leading up to her first termination.  In addition, following EEO counseling, she filed a formal EEO complaint on December 10, 2011 (culminating in the March 24, 2016 Order/ Dismissal in Favor of U.S. District Court Action) ("First EEO Complaint") and another EEO Complaint on April 11, 2016 ("Second EEO Complaint"), which is still pending.

**1.  The November 2, 2011 MSPB Appeal**

On October 6, 2011, Plaintiff was officially terminated from her position of contract specialist with FEMA, which is part of the Department of Homeland Security ("Agency"),  based on her failure to pass a background investigation conducted by the Office of Personnel Management ("OPM") and her status as a probationary employee.  *See* Opposition, Ex. 6 (October 6, 2011 Letter entitled "Notice of Decision to Terminate during Probationary Period");  RJN, Ex. B (February 9, 2012 Initial Decision).  On November 2, 2011, Plaintiff filed an MSPB Appeal challenging her termination on the ground that she was hired under the Agency's reinstatement authority because of her prior Federal service with the Department of the Navy and therefore was not subject to a probationary period.  RJN, Ex. A (November 2, 2011 Appeal) & B (February 9, 2012 Initial Decision).  The Agency conceded that Plaintiff was not, in fact, "in a probationary

---

[5] Defendant has requested that the Court take judicial notice of: 1) three Merit System Protection Board ("MSPB") appeals filed by Plaintiff and the Initial Decisions issued as to those appeals; and 2) a series of  email exchanges between Plaintiff  and two EEO Specialists at FEMA related to the scope of Plaintiff's EEO claims.  *See* Docket Nos. 20-2 and 26-2.  Plaintiff also submitted documents related to her administrative proceedings.  *See* Exhibits 1-25 to Plaintiff's Opposition brief, Docket Nos. 24-1 and 24-2.   Defendant did not object to Plaintiff's reliance on these documents or question their authenticity.  Likewise, Plaintiff did not object to Defendant's requests or question the authenticity of the documents Defendant filed in support of the Motion.  Therefore, the Court takes judicial notice of all of the extra-pleading documents submitted by the parties on the basis that they are "records and reports of administrative bodies."  *See Interstate Nat. Gas Co. v. S. California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953);  *see also Lacayo v. Donahue*, No. 14-cv-4077 JSC, 2015 WL 993448 (Mar. 4, 2015, N.D. Cal.) ("The extrinsic evidence that Defendant submitted all pertains to Plaintiff's administrative proceedings with the EEO; thus, all are either referenced in the complaint or matters of public record and properly considered on either a 12(b)(1) or 12(b)(6) motion to dismiss.").

period" in its November 25, 2011 response and that it had followed improper procedures in terminating Plaintiff.  RJN, Ex. B (February 9, 2012 Initial Decision) at 3.  It rescinded the termination and paid Plaintiff back-pay from the date of termination, October 6, 2011.  *Id.*

The presiding Administrative Judge ("AJ") then issued an order to show cause why the appeal should not be dismissed as moot on the basis that the *status quo ante* had been restored.  *Id.* Plaintiff did not respond or provide any evidence that she was entitled to compensatory damages or any further relief beyond that which had already been provided.  *Id.* at 5.  The AJ concluded the appeal was moot because the Agency had "granted *status quo ante* relief regarding back pay, interest and by placing the appellant in a paid status."  *Id.* at 7. Consequently, the AJ found that the MSPB could "not assert jurisdiction over the rescinded action."  *Id.* at 13;  *see also id.* at 1 ("There has been no determination that the Board has jurisdiction over this appeal").  The Initial Decision also included a notice informing Plaintiff that it would become the final decision of the MSPB on March 15, 2012 and explaining her options for appealing the decision.

Plaintiff does not allege that she challenged the AJ's Initial Decision or that she pursued any claims related to the termination in any other forum and there is nothing in the record that suggests that she did.

### 2.  The December 13, 2011 MSPB Appeal

On September 16, 2011, two weeks prior to the termination that was the subject of the MSPB appeal discussed above, Plaintiff learned that her scheduled deployment to a disaster site in Connecticut was being cancelled and that the Agency planned to terminate her based on her failure to pass the background investigation discussed above.  RJN, Ex. D (April 10, 2012 Initial Decision) at 13.  Plaintiff did not return to work prior to her official termination, on October 6, 2011, and in her December 13, 2011 MSPB appeal she alleged that she had been barred from her workplace without pay, amounting to a constructive suspension.  RJN, Ex. C (December 13, 2011 MSPB Appeal) at 3.  In her MSPB Appeal, she sought back-pay and benefits for this two-week period.  The AJ considered the evidence presented by Plaintiff and the Agency and dismissed Plaintiff's claim for lack of jurisdiction on the basis of her finding that Plaintiff had voluntarily failed to report for duty and had not been constructively suspended from duty.  *Id.* at 23 ("The

Board has no jurisdiction over the voluntary decision of an employee not to report for duty").

Like the previous decision by the AJ, the December 13, 2011 Initial Decision included a notice explaining to Plaintiff how she could appeal that decision. Again, Plaintiff does not allege that she took any further action in connection with this two-week period in any forum and there is nothing in the record that suggests that she did.

### 3. The April 20, 2012 MSPB Appeal

On March 21, 2012, the Agency again terminated Plaintiff from her FEMA position. RJN, Ex. F (May 29, 2013 Initial Decision) at 5. The Agency cited her failure to pass the background investigation discussed above, finding that certain unpaid debts showed that she had engaged in dishonest conduct and therefore, that she did not meet the "suitability" requirement for her position. RJN, Ex. F (May 29, 2013 Initial Decision) at 5-8. Plaintiff filed an MSPB appeal challenging that termination on April 20, 2012. RJN, Ex. E (April 20, 2012 MSPB appeal). Whereas the Agency had followed the wrong procedures in terminating Plaintiff on October 6, 2011, the March 21, 2012 termination was carried out according to the procedures that apply to non-probationary employees. *See* RJN, Ex. F (May 29, 2013 Initial Decision) at 5-6. Because the Agency apparently followed the correct procedures with respect to this termination, the focus of the AJ's initial decision was on whether the Agency's suitability determination was proper. She found that it was not. *Id*. at 18.

The AJ examined in detail the specific debts that were the subject of the Agency's conclusion, which included certain unpaid taxes as well as various debts owed to other creditors. *Id*. at 16-19. As to the circumstances which gave rise to these debts, the AJ credited Plaintiff's testimony that the "debts arose initially because illness forced her to reduce her work hours, and continued because extended unemployment significantly reduced her income." *Id*. at 16. The AJ further found that Plaintiff "engaged in a good faith effort to pay her taxes," that there was "no indication of fraud or deceit in the acquisition of any of her debts," and that while Plaintiff's "circumstances have been difficult, including homelessness, continued depression and lack of resources, she testified that has obtained some employment which has enabled her to make efforts to satisfy the remaining debt." *Id*. at 18. The AJ therefore concluded that Plaintiff's "reduced

income, extended unemployment, and physical and mental illness fully explain[ed] her financial circumstances" and that the Agency had not met its burden of showing that Plaintiff was unsuitable for Federal service due to dishonesty. *Id*. The AJ sustained Plaintiff's charge and ordered that the Agency restore Plaintiff to her position at FEMA retroactive to March 22, 2012. *Id*. at 19. Again, Plaintiff did not pursue any further challenges in any forum based on her second termination.

### 4.  The December 19, 2011 EEO Complaint

On October 19, 2011, Plaintiff sought EEO counseling – a prerequisite to filing a formal EEO complaint. *See* Wallace Decl., Ex. A (December 19, 2011 EEO Complaint showing that Plaintiff first contacted an EEO counselor on October 19, 2011).   She was assigned an EEO counselor, Stacy Merriwether.  Opposition, Ex. 3 (October 31, 2011 email from Mr. Merriwether informing Plaintiff that he had been assigned as her EEO counselor).  Mr. Merriwether's email indicated that Plaintiff sought counseling both as to the October 6, 2011 termination and as to an alleged hostile work environment. *Id*.  When Plaintiff filed her formal EEO Complaint, however, on December 19, 2011 (almost a month after the Agency had rescinded the October 6, 2011 termination) she did not list her October 6, 2011 termination in her description of the conduct that was the basis of her discrimination claims.  Wallace Decl. Ex. A ("December 19, 2011 EEO Complaint" or "First EEO Complaint"). *Id*.

In her First EEO Complaint, Plaintiff checked the following boxes for the bases of the alleged discrimination:  1) Race; 2) Sex; 3) Age; 4) Physical or Mental Disability; and 5) Retaliation/Reprisal for prior EEO activity. *Id*.  In the margin next to the boxes, she wrote that her race is "African-American," her sex is "Female," her date of birth is "5/X/63," that her disability is "chronic pain hip/knee [illegible] Depression" and that her prior EEO activity was in "2011, 2008." *Id*.  Plaintiff identified the "action taken against [her] that [she] believe[d] was discriminatory" in an attachment. *Id*. The attachment listed the following conduct in support of Plaintiff's discrimination claims:

1.   Receipt of JPMorgan Chase Bank Statement: $34.26

2. When my deployment was cancelled, it deprived me of overtime hours.

3. Defamation of character:

> 11/9/10 - Debbie Lewis, Celesta Cook accused me of time-card fraud.
> 12/30/10 - Celesta questioning my therapy appointment and schedule.
> 1/28/l1 - When Debbie Lewis accused me of time card fraud
> 8/16/11 - When Cheryl Lipari told Kimberlee Brown "on two occasions my behavior or communication was disrespectful or rude"
> 7/25/11 When Cheryl Lipari told David Orris "I had an attitude problem"
> 6/21/11 – When Michael Lull told me to get approval of my work from another employee, who was not my technical Supervisor.
> 6/11/1 1 - Within the "Letter of Caution"

4. Denial of training:  CON215,  CON353, Disaster Contracting

5. Letter of Caution: Michael Hull issued the letter; it alleged that Cheryl and et.al complained. The complaints were all about the Regional Contracting Officers duties, which I was not official, assigned or compensated for performing.

6. Non Selection: Personnel said "I didn't qualify because I didn't have the training or education", they failed to request  "waiver". Ann# MG-2011-81 369-KJD-464993D/M

7. Tele- work denial: Michael Lull returned my request and said "You need to provide additional doctor's explanation of how this schedule will help you, and explain your condition, whether its permanent or temporary".

8. Hostile Work Environment:

> 11/9/10 Celesta Cook reported to Ameka Ali "I failed to record my time correctly" time card fraud.
> 12/30/10 Celesta Cook questioned my working schedule again, although it had been approved the prior month.
> 1/28/11 When Debbie Lewis accused me of time card fraud
> 2/7/11 – When Cheryl Lipari told my supervisor in Headquarters "I didn't follow proper procedures in having my training approved" and "I had an attitude"
> 2/22/11 –When Debbie Lewis refused to return my doctor's report
> 3/1/11 – When Cheryl Lipari's Administrative Specialist accused me of "talking too loud"
> 3/3/11 – When Celesta Cook called me into her office to inform me that "Nancy Ward doesn't want me to represent her or Region IX".
> 4/11/11- When Fred Sanchez falsely accuses me of speaking disrespectfully to him, because I disagreed with his opinion
> 4/21/11 – When Michael Lull calls me into his office for counseling "Cheryl Lipari said she noticed you in the hall talking to employees, wasting time"
> 4/21/11 – When Michael Lull told me "you are not entitled to break by-laws"

Wallace Decl., Ex. A (First EEO Complaint).

In a letter dated July 13, 2012, the Director of FEMA's Office of Equal Rights, Pauline Campbell, informed Plaintiff that her office had accepted Plaintiff's EEO claim of "hostile work environment based on race (African American), sex (Female), age (5/1963), physical disability (Chronic Pain, Hip/knee Replacement), mental disability (Depression) and retaliation."  Wallace Decl., Ex. B (July 13, 2012 Letter).  The letter listed the following incidents that the Office of Equal Rights understood to be the basis of Plaintiff's claim:

- On August 16, 2011 and several occasions, you allege that your co-workers described you as "disrespectful, rude and appeared to have an attitude problem" to your other co-workers.
- On June 21, 2011, you allege your supervisor told you to get approval of work from another employee that was not your supervisor.
- On June 11, 2011, you allege you were issued a Letter of Caution that referenced complainants about your regional contracting duties.
- On June 11, 2011 and March 11, 2011, you allege that the Regional Administrator denied your training requests.
- On May 11, 2011, you allege that you were not selected for the Regional Contracting Officer position (MG-2011-81369-KJD-464993 D/M).
- On April 21, 2011, you allege you were called to your supervisor's office to be admonished for "wasting time." You allege that your supervisor told you that you were not entitled to breaks by law.
- Sometime in early 2011, you allege that your supervisor denied your request for medical telework.
- On December 30, 2010, you allege that a co-worker questioned your therapy appointment and schedule.
- On November 19, 2010, you allege that your co-workers accused you of timecard fraud.

Wallace Decl., Ex. B (July 13, 2012 Letter).  Plaintiff was informed that within five days she should submit "written clarification" of her claims if she was "not satisfied with the claims as identified" and that the Office of Equal Rights would assume that she was "satisfied with" the

1    claims as stated if it did not hear from her.  *Id.*

2          On July 21, 2012, Plaintiff sent an email to Ms. Campbell informing her that she had

3    received the July 13, 2012 letter but that she needed an extension on the deadline to respond

4    because she was homeless and  was "unable to communicate other than hand writing and sending

5    through the postal service."  Opposition, Ex. 22.  She also explained that she could "only get to the

6    mailing address once the week" and asked that Ms. Campbell "[p]lease consider [her] situation

7    when sending correspondence to that address."  *Id.*

8          On August 29, 2012 (after Plaintiff's second termination and before she had been restored

9    to her position as a result of the second MSPB appeal), the EEO Investigator assigned to

10   investigate Plaintiff's EEO Complaint, Eddie Neal, conducted an examination of Plaintiff, under

11   oath, in connection with her EEO Complaint.  *See* Wallace Decl., Ex. C (Affidavit).  Mr. Neal

12   sought to establish that Plaintiff's March 2012 termination was *not* part of Plaintiff's claim and the

13   following exchange occurred:

> Neal:  Okay.  Now what is your current status with the Department
> of Homeland Security?
>
> Plaintiff:  Terminated
>
> Neal:   Okay . . .I don't see the termination as part of what I am
> investigating.  Was that filed as a separate claim?
>
> Plaintiff: The termination had to be filed with the MSPB Board
> within thirty days after it was effected.
>
> Neal:  Okay. So –
>
> Plaintiff:  And they said I could not file an EEO on it if I was to file
> with the MSPB Board.
>
> Neal:   Okay. So I just wanted to make sure it wasn't part of what
> I'm doing.  Okay.  Alright.

24   *Id*. at 3.

25         In response to Plaintiff's September 3, 2012 email, EEO Specialist Kristena Jenkins sent

26   Plaintiff an email on September 5, 2012 asking Plaintiff to call her to discuss her EEO claims.

27   Reding Decl., Ex. I.  Plaintiff responded that she would be unable to talk with Ms. Jenkins,

28   however, and told her that all of the information about her claims could be found in the original

United States District Court
Northern District of California

11

EEO complaint and Plaintiff's communications with Mr. Merriwether.  *Id*.

On January 6, 2014, Pauline Campbell, of the Office of Equal Rights, sent Plaintiff a letter stating that her complaint was being amended to include "added claims" and asked Plaintiff's permission to extend the 180-day deadline for investigation by 90 days.  Opposition, Ex. 18. Plaintiff did not agree to the extension, however, stating in an email to Ms. Jenkins on February 24, 2014 that she did not agree to the extension.  Reding Decl. Ex. J.  She stated: "I am not sure what these 'added claims' are, and at this point I do not want to spend any additional time to investigate them.  Therefore, please move forward with this email with the claims that the investigation is completed."  *Id*.

On March 23, 2016, Plaintiff notified the EEOC that she had elected to pursue her discrimination claim in federal district court rather than await a decision from the EEOC as her EEO complaint had been pending for more than 180 days.  Wallace Decl., Ex. D.  Accordingly, on March 24, 2016, an Administrative Judge of the EEOC issued an Order/Dismissal in Favor of U.S. District Court Action.  *Id*.

### 5.  The April 11, 2016 EEO Complaint

On April 11, 2016, Plaintiff filed a second EEO complaint alleging discrimination on the basis of "Race," "Color,"  "Physical or Mental Disability" and Retaliation/Reprisal for prior EEO activity.   Wallace Decl., Ex. E.  She also hand-wrote in the section for identifying the bases for alleged discrimination "Hostile Working Environment; Continuing Violations."  In the attachment describing the basis for the claims, Plaintiff claimed she has been subject to "Retaliation (2013-2016); Disparate treatment (2013-2016); Denial of Training (2013-January 2016); Performance Appraisal 2015 (February 9, 2015); [and] Hostile working environment (2013-2016)."  *Id*.  She states that "[c]ontinuing violations have been present" and lists the following 14 examples in support of her claim:

1. Calls from Angela Meeks prior to my arrival, then she basically ordered that I find internet access to send her a list of things I needed to accommodate my disabilities. However, equipment was not received until 2015.

2. On arrival back to work - Angela Meeks accused me of some sort of behavior, not

resembling my personality or my professionalism.

3. Angela Meeks reported something wrong to Personnel Security regarding a threat made to me.

4. Disparate treatment on the team I was placed on.

5. Toni/Joni/Angela/Chris - assign me to a "Trainee" task book, despite my history with FEMA or my past experiences.

6. No assignments as an 1102 until the end of 2015.

7. Accusations about a behavior and events that were not true.

8. My Performance evaluation for 2015 (when Angela Meeks attempted to add events that were untrue). Then my rating not reflecting the removal of the negative untrue information,

9. No deployments for three years

10. When finally deployed, no accommodations for my disabilities

11. While deployed my reasonable accommodations form sent to others.

12. While deployed my health conditions sent to others.

13. While deployed, harassed by deployed supervisor in various ways (task book, work assignments, treated differently than others).

14. Various comments made by team-mates about me being crazy or a problem employee (2013-2016)

Wallace Decl., Ex. E. As of the date Plaintiff filed her complaint initiating this action the EEOC was still investigating her claim.

### C.   The Motion

In the Motion, Defendant asserts that Plaintiff's claims should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction on the basis that she failed to exhaust her administrative remedies.  Motion at 2.  Defendant further asserts that even if Plaintiff has satisfied the exhaustion requirement, Plaintiff's claims should be dismissed under Rule 12(b)(6) for failure to state valid claims.  *Id.*

In arguing that Plaintiff failed to exhaust her administrative remedies, Defendant points to

United States District Court
Northern District of California

the fact that Plaintiff challenged her two terminations in MSPB appeals, arguing that this constituted an irrevocable election to proceed in that forum and bars Plaintiff's claims in this action to the extent her claims are based on her terminations. *Id*. at 7-10. According to Defendant, all of the remaining claims of discrimination Plaintiff asserts in this action are subject to dismissal for failure to properly exhaust administrative remedies because all of the conduct listed in the December 19, 2011 EEO Complaint occurred more than 45 days before she initiated EEO counseling and therefore, her claims were untimely. *Id*. at 11. Defendant further contends Plaintiff is barred from asserting claims in this action based on her suspension and terminations, or the alleged failure to provide training in September 2011, *see* FAC ¶ 6(f), because she did not challenge these actions in her EEO complaint. *Id*. at 12-13. Finally, Defendant argues that Plaintiff has not alleged sufficient facts to support a plausible inference that she was subject to discrimination on the basis of sex, age, race or disability; nor, Defendant contends, has Plaintiff alleged facts sufficient to support an inference that she was retaliated against for EEO activity. *Id*. at 13-17.

In her Opposition brief, Plaintiff contends the EEOC omitted certain claims from its investigation of her December 19, 2011 EEO Complaint even though she notified the EEOC of the omitted claims on numerous occasions. Opposition at 15-16. In fact, Plaintiff asserts, all of the claims asserted in her FAC were submitted to the agency for EEO counseling within 45 days of the discriminatory conduct and included in her First EEO Complaint. *Id*. at 18. Plaintiff further asserts that she has alleged sufficient facts to state valid discrimination claims for the purposes of Rule 12(b)(6).

In its Reply brief, Defendant rejects Plaintiff's assertion that all of her claims in this action were raised within 45 days in her request for EEO counseling and included in the December 19, 2011 EEO Complaint. Defendant further points to the fact that Plaintiff did not consent to a 90-day extension of time to allow the EEOC to investigate "added claims." *See* Reding Decl., Ex. J. Defendant also argues that even if Plaintiff included her terminations in her EEO Complaint, she abandoned any claims based on the terminations by failing to cooperate and provide further information about these claims to the EEO investigator. *Id.* at 7. In support of this contention,

1    Defendant cites Plaintiff's September 5, 2012 email to Kristena Jenkins stating that she could not

2    talk to Ms. Jenkins on the telephone about her added claims and that all of the information about

3    her claims could be found in her EEO Complaint and her communications with Mr. Neal.  Reding

4    Decl., Ex. I.

5    **III.    ANALYSIS**

6        **A.    Legal Standards under Rule 12(b)(1) and 12(b)(6)**

7            **1.  Rule 12(b)(1)**

8            Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a district court must

9    dismiss an action if it lacks jurisdiction over the subject matter of the suit. *See* Fed. R. Civ. P.

10   12(b)(1). "Subject matter jurisdiction can never be forfeited or waived and federal courts have a

11   continuing independent obligation to determine whether subject-matter jurisdiction exists." *Leeson*

12   *v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012) (internal

13   quotation marks and citations omitted).   On a motion to dismiss for lack of subject matter

14   jurisdiction under Rule 12(b)(1), it is the plaintiff's burden to establish the existence of subject

15   matter jurisdiction.   *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th

16   Cir. 2008).  A party challenging the court's subject matter jurisdiction under Rule 12(b)(1) may

17   bring a facial challenge or a factual challenge. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.

18   2000).  In evaluating a facial challenge to subject matter jurisdiction, the court accepts the factual

19   allegations in the complaint as true. *See Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir.

20   2001).  Where a defendant brings a factual challenge, on the other hand, "a court may look beyond

21   the complaint to matters of public record without having to convert the motion into one for

22   summary judgment."  *White*, 227 F.3d at 1242 (citation omitted).  Once the moving party has

23   made a factual challenge by offering affidavits or other evidence to dispute the allegations in the

24   complaint, the party opposing the motion must "present affidavits or any other evidence necessary

25   to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction."

26   *McCarthy v. Brennan*, No. 15-CV-03308-JSC, 2017 WL 386346, at *5 (N.D. Cal. Jan. 27, 2017)

27   (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).

28

United States District Court
Northern District of California

### 2.  Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a claimant's burden at the pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a [pleading] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Rather, the claim must be "'plausible on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

Pro se pleadings are generally liberally construed and held to a less stringent standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Even post-*Iqbal*, courts must still liberally construe pro se filings. *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010).  As the Ninth Circuit explained in

*Hebbe v. Pliler,* "[w]hile the standard is higher, our obligation remains, where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." 627 F.3d at 342. Nevertheless, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.1982).

If the Court dismisses a complaint under Rule 12(b)(6), it should "grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

## B.     Statutes Invoked in Support of Plaintiff's Claims

Plaintiff asserts each of her claims under multiple statutes, each of which the Court describes briefly below.

### 1.     Title VII

Under Title VII, it is unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits employers from retaliating against an employee for "oppos[ing] any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3(a).

Title VII's protections were extended to federal employees in 1972, when Congress amended the Act to provide that "[a]ll personnel actions" affecting federal employees must be "made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-16. The Ninth Circuit has further held that in enacting Section 2000e-16, Congress intended to protect federal employees from retaliation. *See Ayon v. Sampson*, 547 F.2d 446, 449 (9th Cir. 1976) ("We agree with the parties that Congress, in enacting 42 U.S.C. § 2000e-16 and thereby extending the equal employment opportunity provisions of the Civil Rights Act to federal employees, intended to include the protections from harassment and retaliation embodied in the Civil Rights Act.").

### 2.   The Rehabilitation Act

Both the Americans with Disabilities Act ("ADA") and the Rehabilitation Act prohibit discrimination against an otherwise qualified individual based on his or her disability.   *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004).  The Rehabilitation Act is the precursor to the ADA and applies to federal employees.  *See Daniels v. Chertoff*, No. CV 06-2891 PHXJAT, 2007 WL 1140401, at *2 (D. Ariz. Apr. 17, 2007) (citing 42 U.S.C. § 12111(5)(B)(i) and *Calero–Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 11 n. 1 (1st Cir.2004)). While the ADA excludes the federal government from its definition of "employer," *see* 42 U.S.C. § 12111(5)(B)(i),  the ADA's "standards of substantive liability are incorporated in the Rehabilitation Act." *Walton v. U.S. Marshals Serv*., 492 F.3d 998, 1005 (9th Cir. 2007).

"Both disparate treatment of a disabled person and refusal to make a reasonable accommodation for a disabled person are actionable under the Rehabilitation Act of 1973, 29 U.S.C. § 791." *Gaytan v. Solis*, No. C 07-6367 SBA, 2012 WL 2367822, at *3 (N.D. Cal. June 21, 2012) (*citing Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002); *Mustafa v. Clark County Sch. Dist*., 157 F.3d 1169, 1176 (9th Cir. 1998));  *see also McCarthy v. Brennan*, No. 15-CV-03308-JSC, 2017 WL 386346, at *7 (N.D. Cal. Jan. 27, 2017) (explaining that "'[d]isability discrimination' encompasses disparate treatment—denying an employee equal jobs or benefits because of the employee's disability, 42 U.S.C. § 12112(a), (b)(4), and failure to accommodate a disability, 42 U.S.C. § 12112(a), (b)(5))."

To state a prima facie case under the Rehabilitation Act based on disparate treatment, "a plaintiff must demonstrate that (1) she is a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination because of her disability." *Domingo v. Donohue*, No. 13-cv-4150 CRB, 2014 WL 605485, at *12 (N.D. Cal. Feb. 14, 2014) (quoting *Walton v. U.S. Marshals Serv*., 492 F.3d 998, 1005 (9th Cir. 2007)).  To state a claim under the Rehabilitation Act for failure to accommodate, a plaintiff must "plead facts sufficient to plausibly allege (1) she is disabled, (2) she is a qualified individual, and (3) a reasonable accommodation is possible that would enable her to perform the essential functions of her job." *Estell v. McHugh*, No. 15-cv-04898-MEJ, 2016 WL 4140819, at *5 (N.D. Cal. Aug. 4, 2016) (citing *Zukle v. Regents of the*

United States District Court
Northern District of California

1    *Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999)).

2              **3.  The ADEA**

3          Under the ADEA, it is "unlawful for an employer . . .  to discharge any individual or

4    otherwise discriminate against any individual with respect to his compensation, terms, conditions,

5    or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623.   While the

6    term "employer" excludes the United States, *see* 29 U.S.C. § 630(b), the ADEA also contains a

7    "federal sector provision" that applies to federal employees and provides that  "[a]ll personnel

8    actions affecting employees or applicants for employment who are at least 40 years of age . . .

9    shall be made free from any discrimination based on age." *Gomez-Perez v. Potter*, 553 U.S. 474,

10   479 (2008) (citing 29 U.S.C. § 633a(a)).

11         In order to establish a prima facie case of discrimination under the ADEA, a plaintiff must

12   show that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she

13   experienced an adverse employment action; and (4) similarly situated individuals outside her

14   protected class were treated more favorably, or other circumstances surrounding the adverse

15   employment action give rise to an inference of discrimination.  *Whitman v. Mineta*, 541 F.3d 929,

16   932 (9th Cir. 2008).  Further, the Supreme Court held in *Gomez-Perez* that the federal sector

17   provision protects federal employees from "retaliation for complaining about age discrimination."

18   553 U.S. at 488.

19              **4.  Lilly Ledbetter Fair Pay Act**

20         The LLA was enacted into law on January 29, 2009 in order to legislatively overturn the

21   Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007). In

22   *Ledbetter*, the plaintiff asserted sex discrimination claims under Title VII, alleging that throughout

23   her career with Defendant Goodyear she had been given poor evaluations based on her sex,

24   resulting in a significantly lower salary than was being paid to her male colleagues by the end of

25   her career.  550 U.S. at 621-622.   The Court, however, found that the pay-setting decisions in

26   *Ledbetter* were discrete acts that triggered the running of the time allowed to file an EEOC charge,

27   even though the *effects* of those decisions, in the form of lower compensation, continued into the

28   limitations period.  *Id.* at 623, 628.  As a result, the plaintiff's claims were found to be untimely.

United States District Court
Northern District of California

In response, Congress amended 42 U.S.C. § 2000e–5(e) to provide as follows:

> For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, *or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.*

42 U.S.C. § 2000e–5(e)(3)(A) (emphasis added).  Similarly, the LLA also modifies the ADEA and the Rehabilitation Act "to clarify that a discriminatory compensation decision or other practice that is unlawful under such Acts occurs each time compensation is paid pursuant to the discriminatory compensation decision or other practice, and for other purposes."  *See* PL 111–2 [S 181], January 29, 2009.  In other words, the LLA does not create a free-standing civil rights cause of action but instead, works in tandem with existing civil rights laws to "trigger[] a new filing period, in effect reviving a claim that otherwise would have been time-barred because of a failure to exhaust administrative remedies within 180 days of the original discriminatory compensation decision or practice."  *Johnson v. District of Columbia*, 632 F. Supp. 2d 20, 22 (D.D.C. 2009).

## C.   Exhaustion Requirements

### 1.   Title VII and the Rehabilitation Act

In order to bring a discrimination claim in federal district court under Title VII or the Rehabilitation Act, a plaintiff first must exhaust her administrative remedies.  *Sommatino v. United States*, 255 F.3d 704, 709 (9th Cir. 2001) (Title VII);   *Vinieratos v. U.S., Dep't of Air Force Through Aldridge*, 939 F.2d 762, 773 (9th Cir. 1991) (Rehabilitation Act).   "While not all administrative exhaustion requirements are jurisdictional in nature, Ninth Circuit 'case law holds that substantial compliance with the presentment of discrimination complaints to an appropriate administrative agency is a jurisdictional prerequisite.'" *McCarthy v. Brennan*, No. 15-cv-03308-JSC, 2017 WL 386346, at *6 (N.D. Cal. Jan. 27, 2017) (quoting *Sommatino*, 255 F.3d at 709).   "The jurisdictional scope of the plaintiff's court action depends on the scope of the EEO[ ] charge and investigation."  *Leong v. Potter*, 347 F.3d 1117, 1121-22 (9th Cir. 2003).   In particular, the district court has jurisdiction over the specific claims that were presented in the administrative

1   proceeding, claims of discrimination that are "like or reasonably related to the allegations made

2   before the EEO[ ]," and claims that "reasonably could be expected to grow out of the allegations"

3   in the administrative complaint.  *Id*. at 1122.

4        Courts must construe EEO charges "with utmost liberality since they are made by those

5   unschooled in the technicalities of formal pleading." *Sosa v. Hiraoka*, 920 F.2d 1451, 1458 (9th

6   Cir. 1990) (citation omitted).  "'[T]the crucial element of a charge of discrimination is the factual

7   statement contained therein.'" *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002),

8   as amended (Feb. 20, 2002) (quoting *Sanchez v. Standard Brands, Inc*., 431 F.2d 455, 462 (5th

9   Cir.1970)).  In *B.K.B.*, the Ninth Circuit set forth the following factors for determining whether a

10  plaintiff has exhausted claims based on allegations that were not set forth in the administrative

11  complaint:  (1) the "alleged basis of the discrimination;" (2) "dates of discriminatory acts specified

12  in the charge;" (3) "perpetrators of discrimination named in the charge;" and (4) "any locations at

13  which discrimination is alleged to have occurred." *McCarthy v. Brennan*, 2017 WL 386346, at *6

14  (quoting *B.K.B.*, 276 F.3d at 1100).  "In addition, the court should consider plaintiff's civil claims

15  to be reasonably related to allegations in the charge to the extent that those claims are consistent

16  with the plaintiff's original theory of the case."  *B.K.B.*, 276 F.3d at 1100.

17        **2.  The ADEA**

18        Under the ADEA, federal employees can pursue their age discrimination claims through

19  the EEOC, which has the authority to enforce the statute's federal employee non-discrimination

20  provision.  *See* 29 U.S.C. § 633(b).  However, "[u]nlike Title VII of the Civil Rights Act, 42

21  U.S.C. § 2000e–16(c), the ADEA contains no express *requirement* that a federal employee

22  complainant seek administrative relief, . . . except that an employee who wishes to file suit without

23  pursuing administrative remedies must give the EEOC notice of intent to sue at least 30 days

24  before filing suit."  *Bankston v. White*, 345 F.3d 768, 770 (9th Cir. 2003) (emphasis added); *see*

25  *also Boyd v. Lynch*, No. 14-56800, 2016 WL 5764439, at *1 (9th Cir. Oct. 4, 2016) (unpublished)

26  (holding that the district court had erred in dismissing an ADEA claim based on failure to exhaust

27  because "exhaustion is not required" on ADEA claims) (citing *Bankston*, 345 F.3d at 770).   In

28  particular, ADEA provides that "[w]hen the individual has not filed a complaint concerning age

United States District Court
Northern District of California

21

discrimination with the [EEOC], no civil action may be commenced by any individual  . . . until the individual has given the Commission not less than thirty days' notice of an intent to file such action." 29 U.S.C.A. § 633a(d).  The Ninth Circuit has further held that even where a plaintiff initiated administrative proceedings as to an ADEA claim and then abandoned them, that individual is not barred from bringing the ADEA claim in federal district court.  *See Bankston*, 345 F.3d at 775 (citing *Bak v. Postal Service*, 52 F.3d 241 (9th Cir. 1995)).

### D. Administrative Procedures Governing Exhaustion of Discrimination Claims and "Mixed Complaints"

#### 1. Procedures for Exhaustion under Title VII

The ordinary procedure for a federal employee who seeks to exhaust her Title VII or Rehabilitation Act claims is to initially file an EEO complaint with her agency and then, once the agency has issued its final decision, appeal that decision to either the EEOC or a federal district court.  *Sloan v. West*, 140 F.3d 1255, 1259 (9th Cir. 1998) (citing 29 C.F.R. § 1614.310(a)).  An employee may also file an action in district court if, after 180 days from the date of appealing to the EEOC, the EEOC has not issued a final decision on the matter.   29 U.S.C. § 1614.407(b).

Before a federal employee is permitted to file an EEO Complaint with the agency, she must contact an EEO counselor.  *See* 29 C.F.R. § 1614.105(a) ("Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.").  The regulations require that "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).  This 45-day time period may be extended, however, "when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission."  29

1   C.F.R. § 1614.105(a)(2);  *see also*  29 C.F.R. § 1614.604 ("The time limits in this part are subject

2   to waiver, estoppel and equitable tolling").

3       Similarly, the Ninth Circuit and district courts within the Ninth Circuit have found that the

4   45-day limit is *not* jurisdictional and therefore is subject to waiver, estoppel and equitable tolling.

5   *See Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1043 (9th

6   Cir. 2009) ("although the regulatory pre-filing exhaustion requirement at § 1614.105 does not

7   carry the full weight of statutory authority and is not a jurisdictional prerequisite for suit in federal

8   court, we have consistently held that, absent waiver, estoppel, or equitable tolling, failure to

9   comply with this regulation [is] . . . fatal to a federal employee's discrimination claim in federal

10  court." (internal citations and quotations omitted)); *Lacayo v. Donahoe*, No. 14-cv-04077-JSC,

11  2015 WL 993448, at *8 (N.D. Cal. Mar. 4, 2015) (reviewing Ninth Circuit and district court

12  authority and concluding that "an employee's failure to follow to a tee the 45-day timing

13  requirements is a 'shortcoming [that] relates to the substantive adequacy of [a plaintiff's]

14  complaint[,]' not a jurisdictional flaw") (citing *Taylor v. Blank*, No. 1:12-cv-1931 AWI JLT, 2014

15  WL 1577313, at *4 (E.D. Cal. Apr. 17, 2014); *Mendoza v. Lehigh Southwest Cement Co*., No. 11-

16  cv-01286 LHK, 2012 WL 1534754, at *5 (N.D. Cal. May 1, 2012); *Norris v. Foxx*, No. 13-cv-

17  4928 BHS, 2014 WL 935304, at *4 (W.D. Wash. Mar. 10, 2014)).[6]

18      The timeliness requirement for the purposes of exhaustion of discrimination claims further

19  depends on whether the claim is based on discrete acts or a single discriminatory employment

20  practice.   "[D]iscrete discriminatory acts are not actionable if time barred, even when they are

21  related to acts alleged in timely filed charges."   *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S.

22  101, 113 (2002).  Thus, "[e]ach discrete discriminatory act starts a new clock for filing charges

23

24      [6] To the extent some district courts in the Ninth Circuit have concluded that the 45-day
    requirement is jurisdictional, *see, .e.g.*, , *Gill v. Gen. Servs. Admin.*, No. 14–cv–2999–MEJ, 2014

25  WL 6469377, at *3 (N.D. Cal. Nov. 18, 2014); *Williams v. Mabus*, No. 5:13–cv–00470 HRL,
    2014 WL 5305819, at *4 (N.D. Cal. Oct. 16, 2014); *Goel v. Shah*, No. C 13– 3586 SBA, 2014 WL

26  460867, at *2 (N.D. Cal. Feb. 3, 2014); *Domingo v. Donohue*, Nos. 13–cv–4150–CRB & 13–cv–
    4151 CRB, 2014 WL 605485, at *7–8 (N.D. Cal. Feb. 14, 2014), the undersigned agrees with

27  Judge Corley that these decisions are not persuasive on this question for the reasons stated in
    *Lacayo*.  *See* 2015 WL 993448, at *8-9.

28

United States District Court
Northern District of California

alleging that act." *Id.*; *see also id.* at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'").

On the other hand, "[h]ostile environment claims are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct." *Id.* at 115.   A hostile work environment is an unlawful employment practice that "occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* (citation omitted).  "In determining whether an actionable hostile work environment claim exists, [courts] look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotations and citations omitted).   Because a claim based on an unlawful employment practice is made up of a series of separate acts, the *Morgan* Court explained, the hostile work environment claim is timely so long as "an act contributing to the claim occurs within the filing period." *Id.* at 117.

Because of the fact-intensive nature of the inquiry as to whether a claim involves discrete conduct or a single ongoing employment practice, courts sometimes decline to address the question of timeliness for the purposes of exhaustion at the pleading stage of the case where it cannot be determined from the pleadings whether the employment practice at issue is a discrete act or ongoing.  *See, e.g. Guerrero v. Vilsack*, 134 F. Supp. 3d 411, 432 (D.D.C. 2015) (finding that plaintiff's claims could be construed as alleging ongoing violations and that the Court could not conduct the inquiry required under *Morgan* at the pleading stage of the case, and also noting that "other courts in the district have likewise refrained from deciding, based on an EEO complaint alone, whether alleged violations are discrete or continuing.")

### 2.  Procedures for Exhausting Where a Federal Employee Seeks to Pursue a "Mixed Complaint"

In 1978, Congress passed the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 1201 *et*

United States District Court
Northern District of California

1   *seq.*, "with the hope of simplifying and revising the rules and regulations governing federal

2   employees." *Sloan v. West*, 140 F.3d 1255, 1258 (9th Cir. 1998).   The CSRA created the Merit

3   System Protection Board ("MSPB"), which is a "quasi-judicial Government agency" that

4   adjudicates Federal employee appeals of agency personnel actions.   *Id*. at 1258-59.   The MSPB's

5   appellate jurisdiction is limited to those appeals authorized by "law, rule, or regulation."   5 U.S.C.

6   § 7701(a).   "Generally, the Board is authorized to review 'adverse employment actions,' which

7   fall into one of five categories: a removal, a suspension for more than 14 days, a reduction in

8   grade, a reduction in pay, or a furlough of 30 days or less."   *Sloan*, 140 F.3d at 1259 (citing 5

9   U.S.C. § 7512(1)-(5); 5 C.F.R. § 1201.3 (1997)).

10       The Board also has pendent jurisdiction over discrimination claims brought in connection

11   with an "adverse action" otherwise appealable to it.   29 C.F.R. § 1614.302 (1997).   This means

12   that an employee seeking to pursue a claim of discrimination that is related to an adverse action

13   has the option of exhausting the discrimination claim through procedures governing MSPB

14   Appeals rather than through the EEO procedures described above.   *Sloan*, 140 F.3d at 1259.   In

15   this scenario, the employee has two options: 1) she can file a "mixed case complaint" with the

16   agency EEO department that can then be appealed to the MPSB; or 2) she can file a "mixed case

17   appeal" directly with MPSB.   29 C.F.R. § 1614.302(b) ("An aggrieved person may initially file a

18   mixed case complaint with an agency pursuant to this part or an appeal on the same matter with

19   the MSPB pursuant to 5 CFR 1201.151, but not both.").

20        "A mixed case complaint is a complaint of employment discrimination filed with a federal

21   agency based on race, color, religion, sex, national origin, age, disability, or genetic information

22   related to or stemming from an action that can be appealed to the   . . .[MSPB]."   29 C.F.R. §

23   1614.302(a)(1).   "A mixed case appeal is an appeal filed with the MSPB that alleges that an

24   appealable agency action was effected, in whole or in part, because of discrimination on the basis

25   of race, color, religion, sex, national origin, disability, age, or genetic information."   29 C.F.R. §

26   1614.302(a)(2).[7]   While it is up to the employee to decide which route to follow, the employee

27

28   ────────────────

[7] Note, however, that the Ninth Circuit stated in *Sloan* that an appeal does not "become a 'mixed case appeal'" until the MSPB decides that it has jurisdiction over the case.   *Sloan*, 140 F.3d at

United States District Court
Northern District of California

1    may pursue only one of these options and "whichever is filed first shall be considered an election

2    to proceed in that forum."  29 C.F.R. § 1614.302(b).

3         When a mixed case is appealed to the MSPB, the MSPB must determine that it has

4    jurisdiction over the employee's claims.  *Nater v. Riley*, 114 F. Supp. 2d 17, 24 (D.P.R. 2000),

5    aff'd, 15 F. App'x 11 (1st Cir. 2001).  A finding by the MSPB that it lacks jurisdiction to hear a

6    claim is appealable only to the United States Court of Appeals for the Federal Circuit.  *Sloan*, 140

7    F.3d at 1261 ("Thus, if the MSPB does not have jurisdiction over the non-discrimination claim,

8    then the case is not a 'mixed case,' and any appeal of the jurisdictional determination must be filed

9    in the Federal Circuit Court of Appeals.").  On the other hand, if the MSPB finds it has jurisdiction

10   over the appeal, the Administrative Judge decides the claims on the merits and the employee then

11   has the option of seeking further MSPB review.  *Sloan*, 140 F.3d at 1260.  If the employee does

12   not appeal the AJ's decision to the MSPB panel within 30 days, the AJ's decision becomes final

13   and the employee can either appeal any related discrimination claims to the EEOC or file an action

14   in the federal district court as to the discrimination claim.  *Id.*; *see also* 29 C.F.R. § 1614.310.

15        **E.    Abandonment of Claims and the Scope of Claims That Were Exhausted in the
              First EEO Complaint**

16
         As discussed above, as of the time this action was initiated Plaintiff had received a right-

17   to-sue letter only as to her First EEO Complaint.   Thus, with respect to the claims in the FAC that

18   Plaintiff is required to exhaust, Plaintiff must establish (at least) that these claims: 1) were either

19   raised in the First EEO Complaint or are "like or reasonably related to" those claims; and 2) were

20   not abandoned during the EEO administrative proceedings.[8] Defendant raises the issue of

21   abandonment in its Reply brief when it argues that "if Plaintiff raised her termination as a baisis

22   for her alleged discrimination claims, she then abandoned that claim by failing to cooperate and

23   provide further information to her EEO Specialist and Couselor."  Reply at 7.  It also treats as

24   abandoned (without providing legal authority for doing so) certain claims that were included in

25   Plaintiff's First EEO Complaint but that were omitted from the July 13, 2012 letter listing the

26

27
     _____

28   1259.
     [8] As discussed further below, Plaintiff must also establish that her claims are timely.

United States District Court
Northern District of California

claims that FEMA's EEO department intended to investigate.  *See*, e.g., Motion at 4, 12

(describing conduct listed in July 13, 2012 letter and later stating that Plaintiff did not assert that

"she was denied training opportunities and additional pay" even though the First EEO Complaint

included in the list of discriminatory conduct "Denial of training" and "depriv[ation] of overtime

hours").

   The Ninth Circuit has held that in certain situations, a claimant may fail to exhaust

administrative remedies when he or she refuses to cooperate with the Agency's investigation.  For

example, in *Tanious v. I.R.S.*, the court found that the plaintiff had failed to exhaust his

administrative remedies where he had "failed to comply with Board orders to make himself

available for prehearing telephone conferences, failed to appear for a scheduled hearing, and

refused to answer the Board's telephone calls or receive mail," leading the MSPB to dismiss the

case for failure to prosecute.  915 F.2d 410, 411 (9th Cir. 1990).   On the other hand, a claim is not

barred – even if the plaintiff abandoned the claim in an administrative proceeding – if the

administrative remedy is optional.  Thus, as discussed above, a plaintiff may bring an ADEA

claim in federal district court even if she previously abandoned that claim in an administrative

proceeding.  *See Bankston v. White*, 345 F.3d 768, 770 (9th Cir. 2003); *Bak v. Postal Service*, 52

F.3d 241 (9th Cir. 1995));  *see also  Bullock v. Berrien*, 688 F.3d 613, 618 (9th Cir. 2012) (finding

that under the reasoning of *Bankston*, the same is true where a plaintiff seeking to assert a

Rehabilitation Act claim initiated and then withdrew an optional appeal to the EEOC of the AJ's

decision).

   Because exhaustion of administrative remedies is optional as to ADEA claims, the

question of abandonment is not relevant to that claim.  The Court also does not reach Defendant's

argument that if Plaintiff included any discriminatory termination claims in her First EEO claim

she subsequently abandoned them by failing to cooperate with the Agency's investigation of that

claim.  It is clear from the First EEO Complaint and Plaintiff's sworn affidavit that she did not, in

fact, assert any claims for discriminatory termination in her First EEO Complaint and therefore,

the cases involving abandonment of claims are not on point.[9]

On the other hand, the Court rejects Defendant's suggestion that Plaintiff is limited to the claims that were listed in FEMA's July 13, 2012 letter in establishing exhaustion of her claims. A handful of district court cases in other Circuits have held that failure to respond to a "framing of the issue" letter from the Agency EEO department that omits claims that were included in the original EEO complaint results in abandonment of the omitted claims.  *See, e.g., McKeithan v. Boarman*, 803 F.Supp.2d 63, 68 (D.D.C.2011) (internal citations and quotation omitted), aff'd in part, No. 11–5247, 2012 WL 1450565 (D.C. Cir. Apr. 12, 2012), aff'd sub nom., *McKeithan v. Vance–Cooks*, 498 Fed. Appx. 47 (D.C.Cir.2013); *Sellers v. U.S. Department of Defense*, No. C.A. 07–418S, 2009 WL 559795 (D.R.I. Mar. 4, 2009).  On the other hand, in *Mokhtar v. Kerry*, the court rejected this conclusion, finding based on the regulatory framework that governs EEO investigations that "failure to cooperate during the administrative investigation must be treated as factually and legally distinct from failure to respond to the acceptance-of-claims letter."  83 F. Supp. 3d 49, 66 (D.D.C. 2015), aff'd, No. 15-5137, 2015 WL 9309960 (D.C. Cir. Dec. 4, 2015); *see also Guerrero v. Vilsack*, 134 F. Supp. 3d 411, 434 (D.D.C. 2015) (recognizing that courts in the D.C. Circuit are divided as to whether a plaintiff's failure to respond to the agency's framing of the issue supports a finding that a plaintiff has failed to exhaust her administrative remedies with respect to those claims).  The undersigned finds the reasoning of *Mokhtar* to be persuasive. In any event, it is apparent from the record before the Court that under the facts of this case, Plaintiff made clear to FEMA that she did *not* agree with the framing of her claim in the letter and therefore, that Plaintiff did not through inaction abandon the claims that were omitted.  Therefore, the Court looks to the underlying EEO Complaint to determine whether Plaintiff has exhausted her claims.

---

[9]The Court agrees with Defendant, however, that Plaintiff may not rely on her attempts to *add* such claims for the purposes of demonstrating exhaustion where she denied the Agency's request for a 90-day extension to process those additional claims.  It was Plaintiff's right to deny the Agency's request and to proceed without adding any claims.  As a result, however, she is limited to the claims that were asserted in her First EEO Complaint for the purposes of exhaustion of administrative remedies.

United States District Court
Northern District of California

**F.    Claim One (Wrongful Termination)**

In Claim One, Plaintiff alleges that her rights were violated under Title VII, the ADEA, and the Rehabilitation Act based on allegation that Defendant "processed two wrongful terminations against [P]laintiff, because she was unemployed and ill for almost two years and had debt, violating [P]laintiff's due process rights."   FAC ¶ 9.  Elsewhere in the complaint, she alleges that Defendant's conduct was discriminatory based on her race, sex, age, and physical/mental disability and in retaliation for prior EEO activity   Therefore, construing the complaint liberally, the Court construes this claim to allege that her two terminations by FEMA were motivated by discriminatory animus based on Plaintiff's race, sex, age, and physical/mental disability and retaliatory intent related to Plaintiff's prior EEO activity.

**1.   Whether Plaintiff has Exhausted**

As discussed above, Title VII and the Rehabilitation Act require, as a jurisdictional matter, that a plaintiff must substantially comply with the "presentment of discrimination complaints to an appropriate administrative agency.'" *Sommatino*, 255 F.3d at 709.  Further, in mixed cases involving claims that an adverse employment action was discriminatory, a federal employee must make an election as to the forum in which she will exhaust as to the particular "matter." 29 C.F.R. § 1614.302(b).  Here, Plaintiff elected to challenge both of her terminations before the MSPB.  *See* RJN, Exs. A & E (MSPB appeals for Plaintiff's terminations in 2011 and 2012).  The Court concludes that in doing so, she made an election as to her Title VII and Rehabilitation Act claims based on those terminations because the word "matter" in the regulation refers to the underlying employment action, namely, her terminations.  *See Macy v. Dalton*, 853 F. Supp. 350, 352 (E.D. Cal. 1994) (interpreting a similar election requirement for unionized federal employees  using similar wording and finding that the word "matter" refers to the "underlying [employment] action" rather than the discrimination claim.)  As a consequence, once the Initial Decisions of the AJ became final, thirty days after their issuance, Plaintiff was required to file her discriminatory termination claims within 30 days if she wished to proceed on them either before the EEOC or in federal district court.  *See*  29 C.F.R. § 1614.310.  The Initial Decisions that were issued in connection with Plaintiff's MSPB Appeals of her terminations were issued on February 9, 2012,

United States District Court
Northern District of California

1    and May 29, 2013.  *See* RJN, Exs. B & F. As she did not initiate this action until June 16, 2016,

2    her claims are untimely to the extent they are based on her terminations. [10]

3         The analysis is somewhat different for Plaintiff's ADEA claim.   As discussed above, the

4    Ninth Circuit has held that ADEA claims are not subject to the exhaustion requirements that apply

5    to Title VII and Rehabilitation Act claims.   *See Bankston v. White*, 345 F.3d 768, 770 (9th Cir.

6    2003).   Rather, ADEA requires only that "[w]hen the individual has not filed a complaint

7    concerning age discrimination with the [EEOC], no civil action may be commenced by any

8    individual  . . . until the individual has given the Commission not less than thirty days' notice of an

9    intent to file such action. 29 U.S.C.A. § 633a(d).  Here, however, Plaintiff has not alleged that she

10   gave the required thirty days' notice to the Agency of her intent to assert an ADEA claim in

11   federal district court.  Further, as discussed above, she did not include her terminations in her First

12   EEO Complaint and therefore, she cannot rely on her exhaustion of the claims in that complaint to

13   establish that she has exhausted her administrative remedies as to the ADEA claim.  Accordingly,

14   the Court finds that Plaintiff has not satisfied the prerequisites for asserting her ADEA claim in

15   federal district court.

16         **2.   Whether Plaintiff has Alleged Sufficient Facts to State Valid Claims**

17         The Court further finds that the claims asserted in Claim One are insufficiently alleged

18   under Rule 12(b)(6).  Plaintiff's allegations concerning Defendant's discriminatory motives are

19   entirely conclusory.  She has alleged no specific facts that would support a plausible inference that

20   her terminations were based on her age, sex, race, or alleged physical or mental disabilities, or that

21   they were in retaliation for prior EEO activity.   *See Vasconcellos v. Sara Lee Bakery*, No. C 13-

22   2685 SI, 2013 WL 4014520, at *2 (N.D. Cal. Aug. 5, 2013)(finding that employment

23   discrimination claims did not satisfy the requirements of Rule 12(b)(6) where the plaintiff did "not

24   allege any facts in support of the claims that defendants terminated plaintiff on account of his

25

26   _____

27   [10] The Court also notes that Plaintiff expressly omitted her 2011 termination from the EEO
     Complaint that she filed on December 19, 2011, *see* Wallace Decl., Ex. A.  Moreover, she testified
     under oath in the EEO proceeding that she had done so intentionally because she had been
28   instructed that she could not simultaneously pursue her discriminatory termination claim in her
     EEO proceedings and before the MSPB.  *See* Wallace Decl., Ex. C at 3.

United States District Court
Northern District of California

United States District Court
Northern District of California

physical disability, exercise of family leave, age, or filing for worker's compensation" and instead "simply allege[d] in a conclusory fashion that defendants 'considered plaintiff a problem employee' and 'decided to terminate plaintiff on the basis that' he exercised a right or based on his age or physical disability.") Further, she has not identified any specific disability in her FAC as the basis for her Rehabilitation Act claims or provided any specific facts about her prior EEO activity. Therefore, the allegations in the complaint are insufficient to support a reasonable inference of discrimination as to these claims.

For the reasons stated above, the Court DISMISSES the claims asserted in Claim One. With respect to the Rehabilitation Act and Title VII Claims, the Court concludes that Plaintiff's failure to timely file her discrimination and retaliation claims in federal district court or file an appeal with the EEOC after the MSPB's decision became final cannot be cured and therefore dismisses those claims with prejudice. With respect to the ADEA claim, Plaintiff may be able to establish that she gave the Agency the required 30 days' notice of intent to sue. Therefore, Plaintiff will be given leave to amend to allege facts showing that she has met this administrative prerequisite for bringing her ADEA claim and to allege specific facts sufficient to support an inference that her two terminations were motived by age discrimination.

### G. Claim Two (Failure to Promote)

Plaintiff's failure to promote claim is asserted under the Rehabilitation Act and the LLA. The claim appears to be based on an alleged failure to promote Plaintiff in April 2011. *See* FAC ¶ 6(e). *See also* Opposition at 10 & Ex. 8 (May 13, 2011 email stating that Blackman did not meet "the minimum training/education requirements" for a position described in job announcement MG-2011-81369-KJD-464993D/M2). The Court further construes the claim to be based on disability discrimination as the only substantive violation Plaintiff has alleged is under the Rehabilitation Act.

#### 1. Whether Plaintiff Has Exhausted

With respect to the alleged failure to promote, it appears that Plaintiff may, in fact, have presented the same claim in her First EEO Complaint. In particular, in her First EEO Complaint, she listed her rejection for a position identified by Announcement Number MG-2011-81 369-

1   KJD-464993D/M as one of the grounds for her discrimination complaint.  Wallace Decl., Ex. A.

2   Plaintiff lists the same job in her opposition brief in connection with Claim Two.  Opposition at

3   10.  To the extent that Plaintiff did not initiate EEO counseling  as to this conduct until October

4   19, 2011, however, her claim is not timely.   *See Lyons v. England*, 307 F.3d 1092, 1105 (9th Cir.

5   2002) (holding that because plaintiff had not contacted EEO counselor within 45 days of incidents

6   out of which claims arose, claims were time-barred and therefore not properly exhausted);  *Nat'l*

7   *R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ("[d]iscrete acts such as termination,

8   *failure to promote*, denial of transfer, or refusal to hire are easy to identify.  Each incident of

9   discrimination and each retaliatory adverse employment decision constitutes a separate actionable

10  'unlawful employment practice.'")(emphasis added).

11          The Court further concludes that Plaintiff cannot avoid this result by invoking the LLA.

12  The courts that have addressed the question have found that a failure to promote does not

13  constitute an "other practice" under the LLA that gives rise to a new violation with each paycheck.

14  *See Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 375 (D.C. Cir. 2010) ("In context,

15  therefore, we do not understand 'compensation decision or other practice' to refer to the decision

16  to promote one employee but not another to a more remunerative position."); *Ekweani v.*

17  *Ameriprise Fin., Inc*., No. CV-08-01101-PHX-FJM, 2010 WL 749648, at *5 (D. Ariz. Mar. 3,

18  2010), aff'd, 444 F. App'x 968 (9th Cir. 2011) (following *Schuler* and noting that "[i]n the Ninth

19  Circuit, alleging a failure to promote claim is not sufficient to state a claim for compensation

20  discrimination.") (citing *Williams v. Boeing Co*., 517 F.3d 1120, 1131 (9th Cir. 2008)).  The

21  undersigned agrees.

22          Nonetheless, the 45-day requirement is not jurisdictional and is subject to equitable tolling,

23  waiver and estoppel, as discussed above.  Although Plaintiff has not alleged any facts that would

24  support an inference that any of these doctrines apply, she may be able to allege such facts.

25  Therefore, Plaintiff's claim is DISMISSED with leave to amend as to the failure to promote claim

26  based on the position discussed above to allege facts showing that the 45 day period was tolled

27  under any of these doctrines.

28          The Court concludes that Claim Two, as currently alleged, has not been exhausted.

United States District Court
Northern District of California

### 2.   Whether Plaintiff has Alleged Sufficient Facts to State Valid Claims

Plaintiff alleges that she was denied promotions based on her disabilities.  As discussed above, however, she has not identified the specific disability she contends was the basis of the discrimination.  Nor has she alleged any specific facts that would support an inference that the promotion was denied as a result of a disability.  Therefore, the Court finds that Claim Two does not satisfy the requirements of Rule 12(b)(6).

The Court DISMISSES Claim Two with leave to amend.

### H.   Claim Three (Retaliation)

In Claim Three, Plaintiff alleges that "[d]uring [P]laintiff's interview with the investigator, and during the process of [P]laintiff's investigation, [P]laintiff was harassed about her ongoing EEO case."  She asserts this claim under Title VII and the ADEA.

### 1.   Whether Plaintiff Has Exhausted

In her First EEO Complaint, Plaintiff marked the box for EEO Retaliation and wrote "2008" and "2011" in the margin.  The list of discriminatory actions in the attachment did not, however, include any conduct related to the OPM background investigation that appears to be the subject of this claim.  Even if the mere fact that Plaintiff checked the box for EEO retaliation and listed her 2008 and 20011 EEO activity would have led the agency to investigate the alleged harassment by the OPM investigator, however, the record reflects that Plaintiff's claim is not timely.   In particular, the unsuitability finding that resulted from the investigation was the subject of an August 5, 2011 letter indicating that the investigation had already concluded by that date.  Wallace Decl., Ex. D at 6.  As a consequence, any retaliatory harassment by the investigator, even if it constituted a single ongoing employment practice, would have ended more than 45 days before Plaintiff initiated EEO counseling. Thus, in the absence of any allegations that this claim was tolled, the Court concludes that it was untimely and not properly exhausted.  Plaintiff will be permitted to amend to allege, if she can, facts showing the time for initiating EEO counseling was subject to waiver, estoppel or equitable tolling.

### 2.   Whether Plaintiff has Alleged Sufficient Facts to State Valid Claims

To establish a prima facie case of retaliation, Plaintiff must prove that (1) she engaged in a

protected activity, (2) she suffered an adverse employment decision, and (3) there was a causal link between the protected activity and the adverse employment decision. *Xing Xing Lin v. Potter*, No. C-10-03757-LB, 2011 WL 1522382, at *12 (N.D. Cal. Apr. 21, 2011) (citing *Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1064 (9th Cir. 2002)). Plaintiff alleges that she was treated unfairly by the OPM investigator based on her prior EEO activity but fails to provide any facts in her complaint that identify this prior activity or support an inference that the investigator's conduct was motived by her prior her prior EEO activity. Finally, as the investigator was an OPM employee rather than an employee of the Department of Homeland Security, Plaintiff has not alleged facts supporting an inference that the Department of Homeland Security can be held liable for this conduct. Therefore, Plaintiff fails to state a valid claim. She will be permitted to amend to cure this defect if she can.

### I.   Claim Four (Denial of Training Opportunities)

Plaintiff alleges that she was denied training opportunities based on her disability in violation of the Rehabilitation Act and the LLA. Specifically, she alleges that she was "denied training opportunities, which were later used against [her] future [deployability]." FAC ¶ 15. Elsewhere in the complaint, she alleges that she was denied training in September 2011. FAC ¶ 6(f). As noted above, although Defendant states in its brief that Plaintiff did not included a failure to train allegation in her First EEO Complaint, see Motion at 12, she did include the following entry in her list of discriminatory actions: "Denial of Training: CON215, CON353, Disaster contracting." The Court cannot determine, however, whether this allegation was timely as Plaintiff did not state in the First EEO Complaint *when* these training opportunities were denied. The Court notes that in an email exchange with her EEO counselor, Plaintiff stated that she had been denied training in March 2011 and June 2011, *see* Opposition, Ex. 16. Thus, it appears likely that the training opportunities identified in the First EEO Complaint were denied more than 45 days before Plaintiff initiated EEO counseling. It is possible, however, that the training opportunities referenced in the First EEO Complaint were the ones that she alleged in the FAC were denied in September 2011 (in which case, they would be timely). Because the Court cannot determine from the allegations whether the Denial of Training Opportunities claim is timely, it

34

1    finds that the claim fails to satisfy the exhaustion requirement as currently alleged.

2           Plaintiff will be given an opportunity to amend as to this claim to allege, if she can,

3    specific  facts showing either that the training opportunities listed in her EEO Complaint  occurred

4    within 45 days of EEO counseling or that the 45-day counseling period was subject to waiver,

5    estoppel or equitable tolling.  The Court also finds the LLA does not apply to Plaintiff's failure to

6    train claim and therefore does not render Plaintiff's claim timely in the event that the denials of

7    training occurred more than 45 days before she initiated EEO counseling.  *See Daniels v. United*

8    *Parcel Serv., Inc*., 797 F. Supp. 2d 1163, 1185–86 (D. Kan. 2011), aff'd, 701 F.3d 620 (10th Cir.

9    2012) (holding that "[d]enial of training is a discrete act that is governed by *Morgan*, not by the

10   [LLA]").

11          The Court further finds that Plaintiff has failed to allege any facts that would support a

12   plausible inference that the alleged denial of training was a result of a disability for the same

13   reasons discussed above.   Therefore, this claim does not satisfy the requirements of Rule 12(b)(6).

14   Plaintiff will be permitted to amend this claim to allege facts showing that Defendant's failure to

15   train was based on Plaintiff's disabilities.

16          **J.    Claim Five (Failure to Pay Additional Wages)**

17          In Claim Five, Plaintiff alleges that Defendant failed to afford her additional wages, in

18   violation of the Rehabilitation Act and the LLA.  In particular, she alleges Defendant "prevented

19   [P]laintiff from deploying to disaster declarations, which prevented [P]laintiff from earning

20   additional wages, which were tax free."   As this claim is asserted under the Rehabilitation Act, the

21   Court construes it is alleging that she was denied deployment on the basis of her disability.

22          **1.   Whether Plaintiff Has Exhausted**

23          In her First EEO Complaint, Plaintiff included the following entry:  "When my

24   deployment was cancelled, it deprived me of overtime hours."  Wallace Decl., Ex. A.[11]  Based on

25   the records before the Court, it is reasonable to interpret this claim as referring to the cancellation

26

27   ───────────────

28   [11] Although this conduct was included in the First EEO Complaint, it was omitted from the
     Agency's July 13, 2012 Letter.  *See* Wallace Decl., Ex. B.  As discussed above, the Court relies on
     Plaintiff's EEO complaint rather than the Agency letter in determining the scope of exhaustion.

United States District Court
Northern District of California

of Plaintiff's deployment referenced in the April 10, 2012 Initial Decision in the MSPB Appeal relating to Plaintiff's alleged constructive suspension. *See* RJN, Ex. (April 10, 2012 Initial Decision) at 13. That cancellation occurred on September 16, 2011, within 45 days of initiating EEO counseling. *Id.* As a consequence, to the extent that this claim is based on the alleged discriminatory cancellation of Plaintiff's deployment in September 2011, she has exhausted that claim.

### 2. Whether Plaintiff States a Valid Claim

Like the claims discussed above, Plaintiff has alleged no facts in support of her allegation that her deployment was cancelled on the basis of her disability. Consequently, Plaintiff fails to state a valid claim, even though she has satisfied the exhaustion requirement as to this claim. Plaintiff will be given leave to amend to allege specific facts in support of this claim showing that Defendant's conduct was based on her disability.

### K. Claim Six (Hostile Work Environment)

Plaintiff alleges that she was subject to a hostile work environment in violation of Title VII, the ADEA, and the Rehabilitation Act. Based on the statutes Plaintiff invokes in support of this claim, the Court construes it broadly to allege that the hostile work environment was based on her age, sex, race and disability, as well as her past EEO activity.

### 1. Whether Plaintiff has Exhausted

In her EEO Complaint, Plaintiff expressly stated that she had been subject to a hostile work environment and, as stated above, she checked the boxes for discrimination based on age, race, sex, disability, and prior EEO activity. *See* Wallace Decl., Ex. A. Defendant contends this claim was not properly exhausted because Plaintiff did not timely seek EEO counseling, pointing out that the specific entries in the attachment to the First EEO Complaint that were listed to show a hostile work environment were dated no later than April 2011, many months before Plaintiff initiated EEO counseling. The Court finds that Defendant's reading of the EEO charge is too narrow. As discussed above, courts must construe EEO charges "with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *Sosa v. Hiraoka*, 920 F.2d

1   1451, 1458 (9th Cir. 1990) (citation omitted).  Plaintiff included a long list of discriminatory

2   conduct in the attachment to her First EEO Complaint, listing them by number.  Although number

3   "8" was labeled "hostile work environment," many of the discrete acts listed elsewhere on her list

4   could support a hostile work environment claim.  Included on the list was Plaintiff's cancelled

5   deployment (discussed above) and a credit card charge associated with that deployment for which

6   Plaintiff apparently alleged she had not been reimbursed.  The record reflects that the charge was

7   incurred in mid-September 2011.  *See* Opposition Exs. 14, 15.

8        As discussed above, under *Morgan*, a hostile work environment claim is timely so long as

9   any of the acts that support the claim were raised in a timely manner. Plaintiff included in her First

10   EEO Complaint conduct that occurred within the 45-day period prior to initiating EEO counseling

11   that may be part of a hostile work environment; she also claimed that she was subject to a hostile

12   work environment.  The Court concludes that at the pleading stage, that is sufficient for the

13   purposes of demonstrating exhaustion of this claim.[12]  The Court does not, however, preclude

14   Defendant from challenging this claim on exhaustion grounds at later stage of the case, when the

15   Court is in a better position to evaluate whether the conduct that that occurred within the 45-day

16   period was part of a continuing practice or rather, was a discrete discriminatory act for the

17   purposes of *Morgan*.

18        **2.   Whether Plaintiff Has Stated a Claim**

19        Plaintiff's hostile work environment claim will require that she establish that the allegedly

20   discriminatory conduct of Defendant was because of Plaintiff's membership in a protected group,

21   whether that group is based on her age, race, sex or disability.  As discussed above, Plaintiff has

22   alleged no facts linking the alleged harassment to her membership in any protected class.

23   Although she alleges generally that "[o]ther similarly situated contract specialists not in plaintiff's

24   protected class were not treated the same," *see,* FAC ¶ 17, such conclusory allegations are not

25

26   [12] The Court notes that in Plaintiff's Second EEO Complaint, she asserts a hostile work
environment claim for the period 2013 to 2016.  Wallace Decl., Ex. E. That complaint has not
27   been exhausted.  The Court declines to address whether there should be a particular cut-off date as
to the exhaustion of Plaintiff's hostile work-environment claim in this action.  The parties did not
28   brief that question and in any event, Plaintiff has not yet stated a valid hostile work environment
claim under Rule 12(b)(6).

sufficient to meet the requirements of Rule 12(b)(6).  Plaintiff will be permitted to amend to cure this defect if she can.

### L.    Claim Seven (Disparate Treatment Discrimination)

In Claim Seven, Plaintiff alleges "[d]isparate [t]reatment" in violation of Title VII, the ADEA and the Rehabilitation Act based on the allegation that Plaintiff is a "tenured qualified disabled employee, who is in a protected class" and "was subjected to discriminatory treatment, different from other employees who were not in her protected class, but were similarly situat[ed]." The Court cannot discern the basis for this claim, which is entirely conclusory, or whether it has been exhausted.  Therefore, the Court DISMISSES this claim pursuant to both Rule 12(b)(1) and 12(b)(6) with leave to amend.

## IV.    CONCLUSION

For the reasons stated above the Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss and dismisses all of Plaintiff's claims with leave to amend to cure the deficiencies identified in this Order, as set forth below.  In particular, the Court rules as follows:

- Claim One (Wrongful Termination): DISMISSED based on failure to exhaust administrative remedies and failure to state a claim.  Plaintiff may amend to show that she has satisfied the administrative requirements for bringing her ADEA claim in federal court and to allege facts that support a plausible inference that her terminations were based on age discrimination.  Leave to amend is DENIED to the extent this claim is based on other forms of discrimination under Title VII and the Rehabilitation Act.

- Claim Two (Failure to Promote):  DISMISSED based on failure to exhaust administrative remedies and failure to state a claim.  Plaintiff may amend to allege facts showing that the 45 deadline for initiating EEO counseling on this claim is subject to waiver, estoppel or equitable tolling and to allege facts supporting a plausible inference that the promotion was denied on the basis of a disability.

- Claim Three (Retaliation):  DISMISSED based on failure to exhaust administrative remedies and failure to state a claim.  Plaintiff may amend to allege facts showing

that the 45 deadline for initiating EEO counseling on this claim is subject to waiver, estoppel or equitable tolling and establish a reasonable inference that the investigator was motivated by specific prior EEO conduct of which he had knowledge, and that the Department of Homeland Security can be held liable for his conduct.

- Claim Four (Denial of Training): DISMISSED based on failure to exhaust administrative remedies and failure to state a claim.  Plaintiff may amend to allege facts showing that the training identified in her First EEO Complaint was denied within 45 days of initiating EEO counseling *or*  that the 45-day deadline for initiating EEO counseling on this claim is subject to waiver, estoppel or equitable tolling.  She may also amend to allege facts supporting a plausible inference that the training was denied on the basis of a disability.

- Claim Five (Failure to Pay Additional Wages): DISMISSED based on failure to state a claim.  Plaintiff may amend to allege facts showing that her deployment was cancelled on the basis of a disability.

- Claim Six (Hostile Work Environment):  DISMISSED based on failure to state a claim.  Plaintiff may amend to allege facts showing that she was subjected to a hostile work environment because of her age, sex, race and disability, as well as her past EEO activity.

- Claim Seven (Disparate Treatment):  DISMISSED based on failure to exhaust administrative remedies and failure to state a claim.  Plaintiff may amend to allege specific facts identifying the basis for this claim and that Plaintiff has exhausted administrative remedies as to this claim.

Plaintiff, who is not represented by counsel, is encouraged to consult with the Federal Pro Bono Project's Legal Help Center in either of the Oakland or San Francisco federal courthouses for assistance.  The San Francisco Legal Help Center office is located in Room 2796 on the 15th floor at 450 Golden Gate Avenue, San Francisco, CA 94102.  The Oakland office is located in Room 470-S on the 4th floor at 1301 Clay Street, Oakland, CA 94612.  Appointments can be

United States District Court
Northern District of California

1   made by calling (415) 782-8982 or signing up in the appointment book located outside either

2   office, and telephone appointments are available.  Lawyers at the Legal Help Center can provide

3   basic assistance to parties representing themselves but cannot provide legal representation.

4        **Plaintiff's amended complaint shall be filed within 45 days of the date of this Order.**

5   **IT IS SO ORDERED.**

6

7   Dated:  February 21, 2017

8   _____

9   JOSEPH C. SPERO
    Chief Magistrate Judge